Gerald E. Hawxhurst (Bar No. 220329)
  jerry@cronehawxhurst.com
Kyle Foltyn-Smith (Bar No. 307835)
  kfoltyn-smith@cronehawxhurst.com
CRONE HAWXHURST LLP
11111 Santa Monica Blvd., Suite 620
Los Angeles, California 90025
Telephone:  (310) 893-5150
Facsimile:   (310) 893-5195

Jacob S. Pultman (*Pro Hac Vice Forthcoming*)
  jacob.pultman@ allenovery.com
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 610-6300
Facsimile:  (212) 610-6399

Attorneys for Plaintiff
Decalux S.A.,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECALUX S.A., | CASE NO. 2:18-cv-7249 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| CLIFFORD ICHIYASU, | |
| Defendants. | |

Plaintiff Decalux S.A. brings this action to enforce the terms of a shareholders agreement to which Clifford Ichiyasu and Decalux are both parties, and alleges as follows:

## THE PARTIES

1.      Plaintiff Decalux S.A. is a Luxembourg corporation, with a registered address and principal place of business of 25 Montée de Clausen, L-1343, Luxembourg ("**Decalux**").  Prior to December 2014, Decalux was incorporated under the laws of Cyprus as Decalux Ltd.

2.      Defendant Clifford Ichiyasu is a United States citizen, domiciled in California, and resides at 1453 W 123rd Street, Los Angeles, CA 90047.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332 because the action is between a citizen of a state and a corporate citizen of a foreign state, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## VENUE

4.      Venue is proper in this Court under 28 U.S.C. §1391 because the defendant resides within the Central District of California.

## FACTUAL ALLEGATIONS

5.      Decalux and Mr. Ichiyasu are the joint, equal and only shareholders of Silverwood Aviation, Inc., which is a California corporation with fifty issued shares.

6.      Decalux and Mr. Ichiyasu are the joint, equal and only shareholders of Silverwood Properties Corporation, which is a Nevada Corporation with five hundred issued shares (together with Silverwood Aviation, Inc., the "**Silverwood Companies**").

7.      The Silverwood Companies own and operate a public-use airport in Hesperia, California (the "**Airport**").  The Airport's assets include a runway, as well as a restaurant, office and motel that are also on the Airport property.

8.     The parties have been business partners in connection with the Airport since 2001.

9.     The Airport's assets are held, by and among, the Silverwood Companies.

10.     Since at least 2015, Mr. Ichiyasu and Decalux have engaged in discussions commenced by Mr. Ichiyasu regarding whether to sell the Airport to a third party, and if so, on what terms.  Mr. Ichiyasu and Decalux have not been able to reach agreement on these issues and, as a result, their relationship as shareholders of the Silverwood Companies has broken down.

11.     Mr. Ichiyasu's and Decalux's relationship as shareholders of the Silverwood Companies is governed by a shareholders agreement dated February 11, 2011, signed by both Mr. Ichiyasu and Decalux (the "**Shareholders Agreement**"). *See* Exhibit A and Exhibit B.

12.     Paragraph 6 of the Shareholders Agreement is titled "DISPUTE RESOLUTION" and sets out a procedure for resolving shareholder deadlocks. Specifically, Paragraph 6 of the Shareholders Agreement states that:

> At any time, any Shareholder (the offering Shareholder) may offer to purchase the shares of any other Shareholder (the non-offering Shareholder) for any purchase price.  Such offer shall be made in writing and shall be delivered to the non-offering Shareholder at his or its respective addresses set forth herein.  The offer shall state the price offered, and shall specify the terms of payment, specifically including the price per share.  The non-offering Shareholder shall have fifteen (15) days from the date of receipt of the offer to accept or reject said offer.  The notice of acceptance or rejection shall be in writing and shall be received by the offering Shareholder within said fifteen (15) day period. **If the non-offering Shareholder fails to respond to the offer within the stated period, said failure shall be deemed to be an**

**acceptance of the offer by the non-offering Shareholder.  If the non-offering Shareholder rejects the offer, said non-offering Shareholder shall, as a condition of said rejection, be required to purchase all the shares of the offering Shareholder.  The purchase price (per share) and term shall be the same as were set forth in the offering Shareholder's original offer.**

See Exhibit A ¶ 6 (emphasis added).

13.     The Shareholders Agreement also provides that:

    a.     the agreement "shall be binding on and enforceable by and against the parties to it and their respective heirs, legal representatives, successors, and assigns."  See Exhibit A ¶ 7.7

    b.     the agreement "shall be governed by, and construed in accordance with, the laws of the State of California."  See Exhibit A ¶ 7.10

    c.     Mr Ichiyasu's address for the purpose of delivering an offer under Paragraph 6 is 1453 W 123rd Street, Los Angeles, CA 90047.  See Exhibit A ¶ 7.9

    d.     attorney fees incurred to enforce the Shareholders Agreement are fully recoverable.  See Exhibit A ¶ 7.6.

14.     The full language of Paragraph 7.6 of the Shareholders Agreement, titled "ATTORNEY'S FEES", is as follows:

If any legal action or other proceeding is brought for the enforcement of the Agreement, or to interpret any of the provisions hereof, or of any alleged dispute, breach, default, or misrepresentation in connection with any of the provisions hereof, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in said action or proceeding, whether or not said action or proceeding goes to final judgment, in addition to any other relief to

-3-

which it may be entitled, and shall include any post-judgment attorneys' fees incurred, any attorneys' fees incurred by the prevailing party on appeal, by the prevailing party for any post-judgment motion proceedings or hearings, and any and all attorneys' fees incurred in any and all efforts by the prevailing party to collect its judgment.

15.   On May 4, 2018, Decalux provided Mr. Ichiyasu with an offer to purchase Mr. Ichiyasu's shares in the Silverwood Companies (the "**Offer**").  The Offer was contained in two written letters: an earlier letter attached as Exhibit D, and a second letter attached as Exhibit C.  Both letters were mailed to Mr. Ichiyasu at 1453 W 123rd Street, Los Angeles, CA 90047, and were also sent to Mr. Ichiyasu by fax.

16.   Together, the Offer letters set out the following terms:

    a.   Decalux offered to purchase all of Mr. Ichiyasu's shares in Silverwood Aviation, Inc. for $50 per share, for a total purchase price of $2,500;

    b.   Decalux offered to purchase all of Mr. Ichiyasu's shares in Silverwood Properties Corporation for $500 per share, for a total purchase price of two hundred and fifty thousand USD;

    c.   The combined purchased price offered for Mr. Ichiyasu's shares in the Silverwood Companies was two hundred fifty-two thousand five hundred USD;

    d.   Decalux would pay Mr. Ichiyasu the amount he was owed by the Silverwood Companies under a shareholder loan, which is estimated to be $432,000;

    e.   The Offer would be valid until May 19, 2018 and could be accepted by Mr. Ichiyasu by simple written reply; and

    f.   The purchase price would be paid by Decalux within 3 banking days of Mr. Ichiyasu accepting the offer.

17.     On May 17, 2018, Decalux sent a letter to Mr. Ichiyasu confirming that Decalux had placed the funds necessary to close on the Offer in an escrow account. *See* Exhibit E.

18.     Mr. Ichiyasu did not respond to the Offer before the May 19, 2018 deadline, which was set fifteen days after the Offer was made.

19.     Under Paragraph 6 of the Shareholders Agreement, failure to respond to an offer within fifteen days of it being made is "deemed to be an acceptance of the offer by the non-offering Shareholder." *See* Exhibit A ¶ 6

20.     On June 6, 2018, counsel for Decalux sent a letter to Mr. Ichiyasu's counsel demanding that Mr. Ichiyasu perform his obligations under the Shareholders Agreement and take steps to consummate the sale and transfer of his shares to Decalux pursuant to the terms of the Shareholders Agreement. *See* Exhibit F.

21.     On June 6, 2018, in response to Decalux's letter, counsel for Mr. Ichiyasu purported to reject the Offer by email.

22.     On June 13, 2018, Mr. Ichiyasu's counsel sent a letter to counsel for Decalux stating, amongst other things, that the Offer had not triggered Paragraph 6 of the Shareholders Agreement because it had not, as is required by that Paragraph, been "in writing … and delivered to the non-offering Shareholder at his or her respective address set forth [in the Shareholders Agreement]". *See* Exhibit G.

23.     The June 13, 2018 letter from Mr. Ichiyasu's counsel did not allege that Mr. Ichiyasu rejected the Offer within fifteen days of the Offer being made.

24.     Decalux denies that the Offer was not delivered to Mr. Ichiyasu's designated address, and repeats its allegations in sub-paragraph 13.c. and paragraph 15 of this complaint.

25.     On June 26, 2018, Decalux re-mailed the Offer to Mr. Ichiyasu at 1453 W 123rd Street, Los Angeles, 90047 in order to preclude any argument that Paragraph 6 had not been triggered.  The accompanying correspondence expressly denied that the original delivery had been defective.  *See* Exhibit I.

-5-

26.     On June 26, 2018, counsel for Decalux also sent Mr. Ichiyasu's attorneys a letter repeating Decalux's demand that Mr. Ichiyasu perform his obligations under the Shareholders Agreement.  *See* Exhibit H.

27.     On July 6, 2018, Mr. Ichiyasu's counsel sent Decalux's counsel a letter stating that Mr. Ichiyasu rejected the Offer.

28.     On July 13, 2018, Decalux's counsel sent Mr. Ichiyasu's counsel a letter denying that Mr. Ichiyasu's rejection was valid.

29.     The July 13, 2018 letter from Decalux's counsel also stated that even if Mr. Ichiyasu's rejection was valid, Mr. Ichiyasu would be required under Paragraph 6 of the Shareholders Agreement to purchase Decalux's shares at the same terms as under the Offer, and that such terms would include paying Decalux what it was owed under a shareholder loan, and assuming Decalux's obligations under a third party guarantee.

30.     As of the date of this complaint, Mr. Ichiyasu has not sold his shares to Decalux, nor has he taken steps to purchase Decalux's shares at the same terms as in the Offer.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

31.     Decalux incorporates by reference the allegations of paragraphs 1 through 30 as if set forth fully herein.

32.     The Shareholders Agreement is enforceable and binding on both Decalux and Mr. Ichiyasu.

33.     The Offer, as corrected by the May 4, 2018 correction letter, triggered the Dispute Resolution procedure set out in Paragraph 6 of the Shareholders Agreement.

34.     Mr. Ichiyasu failed to reject the Offer within fifteen days of the May 4, 2018 Offer and is therefore deemed to have accepted the Offer.

35.     On June 6, 2018 and June 26, 2018, Decalux sent letters to Mr. Ichiyasu's counsel demanding that Mr. Ichiyasu perform his obligations under the Shareholders Agreement and sell his shares in the Silverwood Companies to Decalux.

36.     Mr. Ichiyasu has failed to sell his shares in the Silverwood Companies to Decalux and is therefore in breach of the Shareholders Agreement.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

37.     Decalux incorporates by reference the allegations of paragraphs 1 through 32 as if set forth fully herein.

38.     If, in the alternative, the May 4, 2018 Offer did not trigger the Dispute Resolution procedure set out in Paragraph 6 of the Shareholders Agreement, Decalux's re-circulation of the Offer on June 26, 2018 did trigger Paragraph 6 of the Shareholders Agreement.

39.     On July 6, 2018, Mr. Ichiyasu's counsel sent Decalux's counsel a letter rejecting the Offer.

40.     Under Paragraph 6 of the Shareholders Agreement, a condition of Mr. Ichiyasu's rejection is that he is bound to purchase Decalux's shares in the Silverwood Companies at the same terms as under the Offer.  Such terms include Mr. Ichiyasu paying Decalux the amount Decalux is owed under a shareholder loan and assuming Decalux's obligations under a third party guarantee.

41.     On July 13, 2018, Decalux's counsel sent a letter to Mr. Ichiyasu's counsel stating that if Mr. Ichiyasu's rejection of the Offer was valid, Mr. Ichiyasu would be required to purchase Decalux's shares, pay Decalux what it was owed under a shareholder loan, and to assume Decalux's obligations under a third party guarantee.

COMPLAINT

42.     Mr. Ichiyasu has not purchased Decalux's shares, paid out Decalux's shareholder loan, or assumed Decalux's obligations under the third party guarantee and is therefore in breach of the Shareholders Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Decalux respectfully requests that the Court enter judgment in its favor and against defendant Mr. Ichiyasu as follows:

      a.    For an order of specific performance of Mr. Ichiyasu's obligations under the Shareholders Agreement.

      b.    For all additional damages sustained by Decalux as a result of Mr. Ichyasu's breach, including, but not limited to, increased operating costs of the Silverwood Companies.

      c.    For Decalux's attorneys' fees pursuant to Paragraph 7.6 of the Shareholders Agreement.

      d.    For the costs of the suit.

      e.    For such other and further relief as the court may deem proper.

DATED:  August 17, 2018      ALLEN & OVERY LLP

                                CRONE HAWXHURST LLP

                                By:_____*/s/ Gerald E. Hawxhurst*_____

                                    Gerald E. Hawxhurst
                                    Kyle Foltyn-Smith
                                    Attorneys for Plaintiff
                                    Decalux, S.A.

EXHIBIT A

## SHAREHOLDERS' AGREEMENT
## AMONG THE SHAREHOLDERS
## OF SILVERWOOD AVIATION, INC.,
## AND
## SILVERWOOD AVIATION, INC.,
## A CALIFORNIA CORPORATION

THIS SHAREHOLDERS' AGREEMENT ("Agreement") is made on ___2-11___, 2011, at

_____, California, by and among CLIFFORD ICHIYASU; DECALUX LTD, a Cyprus limited

liability company, the ownership interest of which is owned by Gerd Schneider and Claudia

Schneider (Clifford Ichiyasu and Decalux Ltd. are collectively referred to herein as "Shareholders");

and SILVERWOOD AVIATION, INC., a California corporation ("Corporation"), with respect to all

shares of the Corporation's capital stock now or hereafter outstanding, for the purpose of protecting

the Corporation and the Shareholders, as well as providing continuity for the Corporation's business

in the event of the occurrence of certain events discussed in this Agreement. The Shareholders

together own all outstanding shares of the Corporation's stock as follows:

| Names of Shareholders | Number of Shares Owned |
|---|---|
| Clifford Ichiyasu | 100 |
| Decalux LTD | 100 |
| | 200 |

THE CORPORATION AND THE SHAREHOLDERS AGREE AS FOLLOWS:

1.    Shares.   On execution of this Agreement, each Shareholder shall have placed on the

certificates representing his or its shares the legend set forth in Section 1.2 of this Agreement. None

of the shares presently owned or subsequently acquired by the Shareholders shall be sold, pledged,

encumbered, transferred, or disposed of in any way, whether voluntarily, involuntarily, or by

operation of law, except under the terms of this Agreement. Each Shareholder shall have the right to

vote his or its shares and receive the dividends paid on them until the shares are sold or transferred as provided in this Agreement.

1.1     Stock Assignment.  Concurrently with the execution of this Agreement, each Shareholder has endorsed stock assignment forms separate from the certificates representing his or its shares and has deposited the assignment forms and certificates with Samuel Crowe, Esq., attorney for the Corporation. Despite this endorsement and deposit, each Shareholder shall have the right to vote his or its shares and receive the dividends paid on them until the shares are sold or transferred as provided in this Agreement.  None of the shares shall be sold, pledged, encumbered, transferred, or disposed of in any way, whether voluntarily, involuntarily, or by operation of law, except under the terms of this Agreement.

1.2     Legend Restriction.  Each share certificate, whether presently owned or subsequently issued, shall have conspicuously endorsed on its face the following words: "Sale, transfer, hypothecation, encumbrance, or disposition of the shares represented by this certificate is restricted by the provisions of a Buy-Sell Agreement among the Shareholders and the Corporation. All provisions of the Buy-Sell Agreement are incorporated by reference in this certificate. A copy of the Agreement may be inspected at the principal office of the Corporation." A copy of this Agreement shall be delivered to the secretary of the Corporation and shall be shown to anyone inquiring about it.

1.3     Encumbrance.  The parties acknowledge that the Corporation is indebted as of the date of this Agreement to each Shareholder or person related to the Shareholders as set forth below in the following amounts:

| | |
|---|---|
| Clifford Ichiyasu: | $500,000.00 |
| Gerd Schneider: | $210,000.00 |

("Existing Indebtedness"). Promissory notes have been executed and deeds of trust filed with the County Recorder of the County Recorder of San Bernardino County evidencing the Existing Indebtedness.

2.    RIGHT OF FIRST REFUSAL.

2.1    Officer Notice.  Except as provided in Section 3 below, no Shareholder shall sell, transfer, pledge, encumber, hypothecate, or in any way dispose of any of his or its shares or any right or interest in them without obtaining prior written consent of the Corporation and of all other Shareholders, unless the Shareholder shall first have given written notice ("Offer Notice") to the Corporation, of his or its intention to do so. The notice shall be accompanied by an executed copy of any document of transfer, which must include the name and address of the proposed transferee and specify the number of shares to be transferred, the price per share, and the terms of payment.  No offer shall be accepted by a Shareholder to be considered within a shorter time period than required for exercise of the options by the other Shareholder or the Corporation.

2.2    Exercise of Option by Shareholder.  Promptly on receipt of the Offer Notice, the secretary of the Corporation shall forward a copy of the Offer Notice to the remaining Shareholder. Within ten (10) days after receiving the Offer Notice, the remaining Shareholder shall either (1) deliver to the secretary of the Corporation a written election to purchase the shares or a specified number of them (subject to the provisions of Sections 2.3 and 2.5 below) at the price and terms set forth in the Offer Notice, or (2) give notice to the Corporation and the Selling Shareholder that the purchase price in the Offer Notice is deemed unreasonable.  In the event the remaining Shareholder has determined that the purchase price in the Offer Notice is unreasonable, the purchase price shall be established as follows: The remaining Shareholder and the selling Shareholder shall each name an

appraiser. If the two appraisers cannot agree on a value, Samuel Crowe, Esq., shall appoint a third, and the decision of a majority of the three appraisers shall be binding on all parties. The remaining Shareholder and the selling Shareholder shall each pay for their respective appraiser, and each shall pay one-half of the fee of the third expert if such is necessary. Upon determination of the purchase price pursuant to appraisal, the selling Shareholder may cancel the Offer Notice and the selling Shareholder's shares shall again become subject to the terms of this Agreement.

Immediately upon determination of the purchase price by the appraisers as set forth in this section, the remaining Shareholder, if he or it desires to acquire any part or all of the shares offered, shall deliver to the secretary of the Corporation a written election to purchase the shares or a specified number of them at the price determined by the appraisers.

2.3    Exercise of Option by Corporation. If the option is not exercised by the remaining Shareholder on all shares set forth in the Offer Notice as set forth in Section 2.3 above and the Offer Notice has not been cancelled by the selling Shareholder, notice of the proposed transfer in the same form as the notice given to the remaining Shareholder shall be given immediately by the Secretary of the Corporation to the board of directors of the Corporation as to the number of shares remaining and the purchase price as determined by appraisal, if any. The Corporation shall have the option, but not the obligation, to purchase any shares not purchased by the remaining Shareholder on the same terms and conditions specified in the notice and at the price set forth in the Offer Notice or as determined by the appraisers, whichever is lower. Within five (5) days following notice from the Secretary to the board of directors, a meeting of the board of directors shall be duly called, noticed, and held to consider the proposed transfer. The Corporation's right to exercise the option and to purchase the stock is subject to the restrictions governing a corporation's right to purchase its own stock in

California Corporations Code sections 500-501 and to any other pertinent governmental restrictions that are now, or may become, effective. If the Corporation exercises the option within the ten (10) day period, the secretary of the Corporation shall give written notice of that fact to the offering Shareholder. The Corporation shall pay the purchase price in the manner set forth in the transfer document(s) accompanying the notice.

2.4     Payment of Purchase Price. The remaining Shareholder and/or the Corporation shall meet the terms and conditions of the purchase within three (3) months following the expiration of the Corporation's option.

2.5     Transfer to Proposed Transferee. If the Corporation and the remaining Shareholder do not purchase all the shares set forth in the notice of intention to transfer, all the shares may be transferred to the proposed transferee on the terms specified in the notice, at any time within sixty (60) days after expiration of the Corporation's option. The transferee will hold the shares subject to the provisions of this Agreement. No transfer of the shares shall be made after the end of the sixty (60) day period, nor shall any change in the terms of transfer be permitted without a new notice of intention to transfer and compliance with the requirements of this Section 2.

2.6     Transfers in Violation. Any transfer by any shareholder in violation of this paragraph shall be null and void and of no effect.

2.7     Restriction on Transfers by Proposed Transferee. Unless this Agreement expressly provides otherwise, each transferee or any subsequent transferee of shares in the Corporation, or any interest in such shares, shall hold the shares or interest in the shares subject to all provisions of this Agreement and shall make no further transfers except as provided in this Agreement. Transfer of the shares shall not be entered on the books of the Corporation until an amended copy of this Agreement

has been executed by the prospective transferee. Failure or refusal to sign such an amended copy of this Agreement shall not relieve any transferee from any obligations under this Agreement.

3.　　DEATH OF CLIFFORD ICHIYASU.

Within a period beginning with the death of Clifford Ichiyasu and ending sixty (60) days after his death, his estate shall sell and the remaining Shareholder shall purchase all of his shares of the Corporation's stock, at the price provided in Section 4 and on the terms provided in Section 5 of this Agreement.

4.　　PURCHASE PRICE.

The purchase price to be paid for each share pursuant to Section 3 of this Agreement shall be equal to the agreed value of the Corporation divided by the number of shares outstanding as of the date the price is to be determined. The initial agreed value of the Corporation is $350,000.00. On September 15 of each year hereafter, the parties to this Agreement shall review the Corporation's financial condition as of the end of the preceding fiscal year and shall decide by mutual agreement the Corporation's fair market value, which, if agreed on, shall be the Corporation's value until a different value is agreed on or otherwise established under this Agreement. If the parties agree, they shall provide evidence of it by placing the value and their written and executed signatures on Exhibit "A" attached hereto and by reference incorporated herein.

　　　　　　4.1　　Determination of Purchase Price. If no valuation has been agreed upon within two (2) years before the date of death of Clifford Ichiyasu, the value of his shares of stock in Corporation shall be agreed on by the personal representative of the deceased Shareholder and the remaining Shareholder. If they do not agree on a value within thirty (30) days after the date of the event requiring the determination, the value shall be determined as follows: The remaining

Shareholder and the personal representative of the deceased Shareholder shall each name an appraiser. If the two appraisers cannot agree on a value, Samuel Crowe, Esq., shall appoint a third, and the decision of a majority of the three appraisers shall be binding on all parties. The remaining Shareholder and the estate of the deceased Shareholder shall each pay for their respective appraiser, and each shall pay one-half of the fee of the third expert if such is necessary.

5.  PROCEDURE ON TRANSFER OF SHARES.

5.1  Certificates. Consideration for the shares shall be delivered as soon as practicable to the person entitled to it, and the secretary shall cause the certificates representing the purchased shares to be properly endorsed and, on compliance with Section 2.7, shall issue new certificate(s) in the name of the purchaser or purchasers.

5.1  Payment of Purchase Price on Death. If the purchase follows the death of Clifford Ichiyasu, the price to be paid for such shares shall be determined in accordance with the provisions of Section 4 of this Agreement. The remaining Shareholder shall pay twenty percent (20%) of the purchase price in cash and shall pay the balance of the purchase price pursuant to the terms of a promissory note, executed by the purchasing Shareholder or the Corporation, as applicable. Each maker agrees to pay his or its pro rata portion of each installment of principal and interest as it falls due. The note shall provide for payment of principal in sixty (60) equal monthly installments with interest on the unpaid balance at the NY Interbank Rate, with full privilege of prepayment of all or any part of the principal at any time without penalty or bonus. The note shall provide that, if a default occurs, at the election of the holder the entire sum of principal and interest will immediately be due and payable and that the makers shall pay reasonable attorney fees to the holder if suit is commenced because of default. The note shall be secured by a pledge of all the shares being purchased in the

transaction to which the note relates and of all other shares owned by the purchasing Shareholder. The pledgeholder shall be Samuel Crowe, the corporate attorney for Corporation, and the pledge agreement shall contain such other terms and provisions as may be customary and reasonable. As long as no default occurs in payments on the note, the purchasers shall be entitled to vote the shares; however, dividends shall be paid to the holder of the note as a prepayment of principal. The purchasers shall expressly waive demand, notice of default, and notice of sale, and they shall consent to public or private sale of the shares in a default, in mass or in lots at the option of the pledgeholder, and the seller shall have the right to purchase at the sale.

6.      DISPUTE RESOLUTION.  At any time, any Shareholder (the offering Shareholder) may offer to purchase the shares of any other Shareholder (the non-offering Shareholder) for any purchase price.  Such offer shall be made in writing and shall be delivered to the non-offering Shareholder at his or its respective addresses set forth herein.  The offer shall state the price offered, and shall specify the terms of payment, specifically including the price per share.  The non-offering Shareholder shall have fifteen (15) days from the date of receipt of the offer to accept or reject said offer.  The notice of acceptance or rejection shall be in writing and shall be received by the offering Shareholder within said fifteen (15) day period.  If the non-offering Shareholder fails to respond to the offer within the stated period, said failure shall be deemed to be an acceptance of the offer by the non-offering Shareholder.  If the non-offering Shareholder rejects the offer, said non-offering Shareholder shall, as a condition of said rejection, be required to purchase all the shares of the offering Shareholder.  The purchase price (per share) and term shall be the same as were set forth in the offering Shareholder's original offer.

/////

7.    MISCELLANEOUS.

7.1    Approvals. The Corporation agrees to apply for, and use its best efforts to obtain, all governmental and administrative approvals required in connection with the purchase and sale of shares under this Agreement. The Shareholders agree to cooperate in obtaining the approvals and to execute any and all documents that they may be required to execute in connection with the approvals. The Corporation shall pay all costs and filing fees in connection with obtaining the approvals.

7.2    Termination. This Agreement shall terminate on:

7.2.1    The written agreement of all parties;

7.2.2    The dissolution, bankruptcy, or insolvency of the Corporation; or

7.2.3    At such time as only one Shareholder remains.

7.3    Wills. Clifford Ichiyasu agrees to include in his will a direction and authorization to his executor to comply with the provisions of this Agreement and to sell his shares in accordance with this Agreement. However, his failure to do so shall not affect the validity or enforceability of this Agreement.

During Clifford Ichiyasu's lifetime, by their signature as the Members/managers of Decalux Ltd., Gerd Schneider and Claudia Schneider agree that they will not transfer any portion of their ownership interest in Decalux Ltd. other than to their issue, all of whom shall be bound by all of the terms and provisions of this Agreement.

7.4    Further Execution. Each party to this Agreement agrees to perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement.

7.5    Amendment. The provisions of this Agreement may be waived, altered, amended,

modified, or repealed, in whole or in part, only on the written consent of all parties to this Agreement.

      7.6     <u>Attorneys' Fees</u>.  If any legal action or other proceeding is brought for the enforcement of this Agreement, or to interpret any of the provisions hereof, or of any alleged dispute, breach, default, or misrepresentation in connection with any of the provisions hereof, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in said action or proceeding, whether or not said action or proceeding goes to final judgment, in addition to any other relief to which it may be entitled, and shall include any post-judgment attorneys' fees incurred, any attorneys' fees incurred by the prevailing party on appeal, by the prevailing party for any post-judgment motion proceedings or hearings, and any and all attorneys' fees incurred in any and all efforts by the prevailing party to collect its judgment.

      7.7     <u>Binding Agreement</u>.  This Agreement shall be binding on and enforceable by and against the parties to it and their respective heirs, legal representatives, successors, and assigns.

      7.8     <u>Separate Provisions</u>.  All provisions of this Agreement are separate and divisible, and if any part is held invalid, the remaining provisions shall continue in full force and effect.

      7.9     <u>Notices</u>.  All notices, requests, demands, and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or within seventy-two (72) hours after mailing, if mailed to the party to whom notice is to be given, by first-class mail, registered or certified, postage prepaid, and properly addressed to the party at the address set forth on the signature page of this Agreement, or any other address that a party may designate by written notice to the others.

7.10    Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

7.11    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## SIGNATURE PROVISION

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first shown above.

SILVERWOOD AVIATION, INC.

By: _____
    GERD SCHNEIDER, President

By: _____
    GERD SCHNEIDER, Secretary

SHAREHOLDERS:

_____
CLIFFORD ICHIYASU
Address:  1453 W 123rd St
          Los Angeles CA 90047

DECALUX LTD.

By: _____
    Gerd Schneider, Manager Member
    Address:  137 Gladstonos, Ste 301
              3032 Limassol, Cyprus

By: _____
    Claudia Schneider, Manager/Member
    Address:  137 Gladstonos Ste 301
              3032 Limassol, Cyprus

EXHIBIT "A"

The initial, mutually agreed valuation of each share of stock of SILVERWOOD AVIATION, INC., shall be One Thousand Seven Hundred Fifty Dollars ($1,750.00), evidenced by the signatures of the Shareholders on the appropriate lines corresponding to date of execution of this Agreement. Hereafter, the Shareholders shall value the shares of stock of the Corporation pursuant to this Schedule and Section 4 of the Agreement.

| Year | Value of Each Share of Stock of Corporation | Acknowledgement |
|------|---------------------------------------------|-----------------|
| February 11, 2011 (Date of Execution of Agreement) | $1,750.00 | C. Ichiyasu |
| | | Decalux Ltd. |
| 9/2011 | $ _____ | _____ |
| | | C. Ichiyasu |
| | | _____ |
| | | Decalux Ltd. |
| 9/2012 | $ _____ | _____ |
| | | C. Ichiyasu |
| | | _____ |
| | | Decalux Ltd. |

EXHIBIT B

3 ( THREE)

certificate number

# STOCK CERTIFICATE

SILVERWOOD PROPERTIES CORPORATION

500

number of shares

Corporate Name

Incorporated in: NEVADA

has a total authorized amount of _____ one thousand _____ shares, at _____ no _____ par value.

This is to certify that _____ Clifford Ichiyasu _____ is the owner of _____ 500 _____ shares of _____ common _____ stock of the above named corporation, which are non-assessable, fully paid shares. The transfer of these shares must be done in accordance with the by-laws of the named corporation, in person, or by a duly appointed attorney or officer of the named corporation, and recorded in the books of the corporation.

_____ Gerd Schneider _____
President

_____ Anthony V. Raftopol _____
Secretary

_____ Anthony V. Raftopol _____
Treasurer

For _____ received, I, _____ sell and transfer _____ shares

represented by this certificate to _____

and appoint _____ the _____ to record this transfer in the corporate books.

_____
Name of shareholder

_____
Signature of shareholder

_____
Witness
Signature and name

This Stock is subject to the covenants and restrictions of the shareholders agreement signed between

Clifford Icziyasu and Decalux On Fes M.R COM

EXHIBIT C

CLIFFORD ICHIYASU

Via FAX

ORIGINAL BY COURRIER


## ERRATUM


Dear Clifford,

in my yesterday´s offer is a calculation  mistake from an excel bug .

The Value per share on Silverwood PROPERTIES CORP.   offered is

**USD five hundred ( 500 USD)** straight cash offer.  It is NOT 5000 USD ( five thousand).


The total price Decalux offers for your shares   in both companies is 252 500 USD.

To which the repayment of your shareholder loans is added.



Sincerely and all the best for your birthday today


Claudia Schneider

Decalux SA

HP LaserJet 400 colorMFP M475dw

Fax Confirmation

HP Fax
0035226262905
5-May-2018  06:02

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 577 | 5/ 5/2018 | 06:00:57 | Send | 0013237570998 | 1:46 | 1 | OK |

CLIFFORD ICHIYASU

Via FAX

ORIGINAL BY COURRIER

**ERRATUM**

Dear Clifford,

In my yesterday's offer is a calculation mistake from an excel bug.

The Value per share on Silverwood PROPERTIES CORP.   offered is

**USD five hundred ( 500 USD)** straight cash offer.  it is NOT 5000 USD ( five thousand).

The total price Decalux offers for your shares   in both companies is 252 500 USD.

To which the repayment of your shareholder loans is added.

Sincerely and all the best for your birthday today

Claude Schneider                    4 May 2018

Decalux SA

DECALUX  S.A.

EXHIBIT D

**Decalux S.A.**
L-1343 Luxembourg, 25, Montée de Clausen
Grand Duchy of Luxembourg
Capital: EUR 34.200,-
R.C.S. Luxembourg B 193.426
**Tel: 26262905**

TO:

Clifford Ichiyasu
1453 West  123rd Street
Los Angeles CA 90047 -5314
USA

Via facsimile / original to follow:

CC :   Jerimy Kirschner Esq. legal counsel Clifford Ichiyasu,
        Silverwood Properties Corp. ; Silverwood Aviation Inc.  att. Gerd Schneider,
        director , A.V. Raftopol  , secretary


Dear Clifford,

I have been informed by the Management of Silverwood Aviation Inc. and
Silverwood Properties Corp, that you  are pushing it  in a very ambitious way to sell
all of the real estate including the motel business of  the Airport  to a San Diego
Client. You know that Decalux is unhappy with the Broker  and does not trust this
Broker.  Therefore Decalux is not intending to enter into such a sale without the
necessary diligence and  certainly not without properly drafted and reviewed legal
contracts that will protect  the corporations  but lastly you and Decalux as the
shareholders.

I do not understand how your lawyer  tries to make you  believe that  such a complex
deal can be  safely done as a real estate sale  with totally unreasonable deadlines
imposed.

Your lawyer insists that the asset sales price of 2,1 Mio USD minus commissions, for
a Broker that is not even under contract  is acceptable and  is making huge pressure
on the company's management for such a crazy deal  to be closed immediately
without delays and legal  precautions.
Therefore I assume  that this sales price is also acceptable to you  as a shareholder.

I disagree to this sale without the necessary legal  diligence and professional legal and
tax support for the companies as sellers, and I disagree that a broker that has
breached its obligations in the past  is representing both  Seller and Buyer in a deal
that is much more than the sale of real estate.



1

You have invoked a dead lock situation and  propose/ threaten that you would
undertake legal actions  to put the airport under court receivership.
There is no reason to do so . As a shareholder I am not against  the offer provided , I
am only insisting that this is done correctly.

To help you  in your obvious extremely urgent need for  money from this sale and as
a sign of good faith towards you as  our partner and co-shareholder,  Decalux SA ,
being a 50% shareholder is hereby offering you  firmly :

To buy all of your shares which  you are holding in the two entities that own the
business and the real estate known as the "Hesperia Airport", namely Silverwood
Aviation Inc. ; and Silverwood Properties Corporation d.b.a Summit Valley Properties
in the state of California at a purchase price of

$ 50 ( fifty USD) per share  for ALL OF YOUR SHARES ( 50 pcs)  you hold in
Silverwood Aviation Inc.; and
$ 5000 ( five thousand USD) per share for  ALL OF YOUR SHARES ( 500 pcs)  you
hold in Silverwood Properties Corp.

With the purchase is  your shareholder loans will be repaid , subject to the
conveyance of the first deed of trust securing the same.

This offer is valid  until 19th of May  end of the business day ( PST)., and can be
accepted by simple written reply.
The purchase price will be paid  by Decalux within 3 banking days from the
acceptance of  his offer by you signing the standard share sales purchase agreement
The total amount  is exceeding the amount that you would receive from the asset
deal, that your lawyer tries so desperately  push down the management´s throat.

I hope this solves the matter and helps you with the obvious urgent need for cash.

To reply to this offer, please contact Decalux´s Luxembourg lawyers ,  Allen & Overy
Thomas Berger;  avocat à la Cour
33 avenue J.F. Kennedy | L-1855 Luxembourg
Tel  +352 444455 196 | Fax  +352 444455 558

Made today, May 4th 2019
At Luxembourg

Decalux SA (Claudia Schneider)
Director

DECALUX S.A.

2

## HP LaserJet 400 colorMFP M475dw

# Fax Confirmation

HP Fax
0035226262905
4-May-2018  20:22

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 569 | 4/ 5/2018 | 20:19:14 | Send | 0013237570998 | 2:41 | 2 | OK |

**Decalux S.A.**
L-1343 Luxembourg, 25, Montée de Clausen
Grand Duchy of Luxembourg
Capital: EUR 34.200,-
R.C.S. Luxembourg B 193.426
**Tel: 26262905**

TO:

Clifford Ichiyasu
1453 West 123rd Street
Los Angeles CA 90047 -5314
USA

Via facsimile / original to follow:

CC :   Jeremy Kirschner Esq. legal counsel Clifford Ichiyasu,
       Silverwood Properties Corp. ; Silverwood Aviation Inc.  att. Gerd Schneider,
       director , A.V. Raftopol , secretary

Dear Clifford,

I have been informed by the Management of Silverwood Aviation Inc. and
Silverwood Properties Corp, that you  are pushing it  in a very ambitious way to sell
all of the real estate including the motel business of  the Airport  to a San Diego
Client. You know that Decalux is unhappy with the Broker  and does not trust this
Broker.  Therefore Decalux is not intending to enter into such a sale without the
necessary diligence and  certainly not without properly drafted and reviewed legal
contracts that will protect  the corporations  but lastly you and Decalux as the
shareholders.

I do not understand how your lawyer  tries to make you  believe that  such a complex
deal can be  safely done as a real estate sale  with totally unreasonable deadlines
imposed.

Your lawyer insists that the asset sales price of 2,1 Mio USD minus commissions, for
a Broker that is not even under contract  is acceptable and  is making huge pressure
on the company's management for such a crazy deal  to be closed immediately
without delays and legal  precautions.
Therefore I assume  that this sales price is also acceptable to you  as a shareholder.

I disagree to this sale without the necessary legal  diligence and professional legal and
tax support for the companies as sellers, and I disagree that a broker that has
breached its obligations in the past  is representing both  Seller and Buyer in a deal
that is much more than the sale of real estate.

1

EXHIBIT E

# Decalux S.A.

L-1343 Luxembourg, 25, Montée de Clausen
Grand Duchy of Luxembourg
Capital: EUR 34.200,-
R.C.S. Luxembourg B 193.426
**Tel: +352 26262905**

Dear Clifford,

I hope this letter finds you well.
To support the honesty of Decalux´s offer to acquire your shares in the
two entities Silverwood Aviation INC. and Silverwood Property Corp,
we hereby confirm that the funds are placed in a Trust account with the
law offices of Samuel Crowe Esq. , who shall release them immediately
upon the signature of the share sales purchase agreement, the
assignment of your shareholder loans and the conveyance of the deeds
of trust and the shares.
Within the next day you shall receive the draft of the share sales-
purchase agreement.

Sincerely

Claudia Schneider
Decalux SA
Luxembourg, May 17th 2018

Cc: Allen & Overy Lawyers ; Silverwood Aviation Inc. ; Silverwood
Property Corp.

EXHIBIT F

# ALLEN & OVERY

Allen & Overy LLP
1221 Avenue of the Americas
New York  NY  10020

Tel            212 610 6300
Fax           212 610 6399
Jacob.Pultman@allenovery.com

**BY EMAIL and U.S. MAIL**

Mr. Jerimy Kirschner
Jerimy Kirschner & Associates
5550 Painted Mirage Rd., Suite 320
Las Vegas, NV 89149

Michael Azat
The Azat Law Group
241 E. Colorado Blvd., Suite 201
Pasadena, CA 91101

June 6, 2018

Dear Messrs.  Kirschner and Azat,

### Re: Silverwood Aviation, Inc. / Silverwood Properties Corp.

We write on behalf of Decalux S.A.(**Decalux**) in relation to its May 4, 2018 offer to purchase Clifford Ichiyasu's shares in the above mentioned entities (the **Offer**), as rectified by the erratum sent on May 5, 2018.  We write also to follow up on the Share Purchase Agreements sent to Mr. Ichiyasu by Decalux on May 29, 2018.

Mr. Ichiyasu has failed to respond to the Offer before the May 19, 2018 deadline. Pursuant to Paragraph 6 of the Shareholders Agreement entered into between Decalux and Mr. Ichiyasu, Mr. Ichiyasu is therefore deemed to have accepted the Offer.

Paragraph 6 provides:

> At any time, any Shareholder (the offering Shareholder) may offer to purchase the shares of any other Shareholder (the non-offering Shareholder) for any purchase price.  Such offer shall be made in writing and shall be delivered to the non-offering Shareholder at his or its respective addresses set forth herein. The offer shall state the price offered, and shall specify the terms of payment, specifically including the price per share.  The non-offering Shareholder shall have fifteen (15) days from the date of receipt of the offer to accept or reject said offer.  The notice of acceptance or rejection shall be in writing and shall be received by the offering Shareholder within said fifteen (15) day period.  **If the non-offering Shareholder fails to respond to the offer within the stated period, said failure shall be deemed to be an acceptance of the offer by the non-offering Shareholder**.

Shareholders Agreement ¶ 6 (emphasis added). A copy of the Shareholders Agreement is enclosed with this letter.

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Barcelona, Beijing, Belfast, Bratislava, Brussels, Bucharest (associated office), Budapest, Casablanca, Doha, Dubai, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Luxembourg, Madrid, Milan, Moscow, Munich, New York, Paris, Perth, Prague, Riyadh (cooperation office), Rome, São Paulo, Seoul, Shanghai, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C. and Yangon.

Decalux invokes Paragraph 6 and demands that Mr. Ichiyasu perform his obligations under the Shareholders Agreement and under the Share Purchase Agreements. Decalux stands ready to meet its obligations under the Share Purchase Agreements.

Please be informed that we have been instructed to take appropriate action, as necessary, against Mr. Ichiyasu should he fail to consummate the sale and transfer of his shares to Decalux before June 15, 2018. This includes the commencement of appropriate legal proceedings seeking specific performance of the Shareholders Agreement.

This letter is sent to you with full reservation of all rights of Decalux.

Your prompt attention to this matter is appreciated.

Sincerely,

Jacob S. Pultman

Copy (by facsimile):          Clifford Ichiyasu
+1 (323) 757 0998             1453 West 123 Street
                              Los Angeles CA 90047-5314

EXHIBIT G

# Michael O. Azat
## The Azat Law Group
241 E. Colorado Blvd., Suite 201 | Pasadena, CA 91101 | Phone: (626) 394-9532
mike.azat@azatlaw.com

June 13, 2018

**VIA E-MAIL AND EXPRESS MAIL**

Alexander Calthrop
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 756 1155
e-mail: alexander.calthrop@allenovery.com

Dear Mr. Calthrop,

Thank you for clarifying who you and Louis Fazzi represent and that neither of you represent Gerd Schneider or his wife, Claudia Schneider. This matter stems from Clifford Ichiyasu and Mr. Schneider's (the "Parties") equal ownership of that real property or properties located in the City of Hesperia known as the Hesperia Airport (the "Property"). Mr. Ichiyasu obtained his ownership interest in the Property after he gave Mr. Schneider approximately $750,000 in cash payments to help procure the Property from its previous owner, Gabor Beszi. The Property is now the sole asset of the real estate holding companies, Silverwood Aviation, Inc., a California corporation, and Silverwood Properties Corporation, Inc., a Nevada corporation (collectively "Silverwood") and is valued at over $2 million.

Originally, to formalize Mr. Ichiyasu's ownership of the Property, he and Mr. Schneider were co-owners and managers of the limited liability company that held title to the Property, Hesperia Airport LLC. Since that time, Mr. Schneider has unilaterally transferred ownership of the Property from Hesperia Airport LLC to Silverwood Aviation, Inc., to Silverwood Properties Corporation, and back to Silverwood Aviation, Inc. Each time Mr. Ichiyasu's ownership has become more convoluted and buried under layers of shell corporations and deeds of trust for what Mr. Schneider represented to Mr. Ichiyasu as necessary to procure loans to improve the Property. Mr. Ichiyasu has never seen any funds from these supposed loans and the Property was never improved. In fact, the Property has fallen into disrepair and is in material danger of losing its designation as an operating airport. Mr. Schneider's pattern of conduct points to fraudulent intent and bad faith.

Turning to the purported offer that Jacob Pultman referenced in his letter of June 4, 2018 ("offer"), that offer is not valid. Mr. Pultman's letter ignores the pertinent language of paragraph 6 of Silverwood's Shareholder Agreement, which was drafted by Mr. Schneider's attorney, Samuel Crowe, ("Agreement") and dated February 11, 2011. The Agreement requires any offer of one shareholder to purchase the shares of the other to be "in writing and . . . delivered to the non-offering Shareholder at his or its respective address set forth herein." Shareholder Agreement, ¶ 6. The offer was never delivered to Mr. Ichiyasu's address, which was identified in the Agreement as 1453 W. 123rd St., Los Angeles, CA 90047. Nor was the offer served

Silverwood Aviation, Inc.
June 13, 2018
2 of 3

personally or by mail, as required under section 7.9 of the Agreement.  Therefore, the offer is invalid.

Your client's attempted use of section 6 of the Agreement to force Mr. Ichiyasu to sell his interest in Silverwood, and with it his interest in the Property, for only $250,000 is both procedurally and substantively unconscionable.  It appears that you interpret section 6 to allow Mr. Schneider, through what I understand to be Mr. Schneider and his wife's wholly owned and controlled foreign entity, Decalux, to purchase Mr. Ichiyasu's interest in Silverwood and the Property for a mere $250,000, even though Mr. Ichiyasu recently presented an all-cash offer to Mr. Schneider for a third-party to purchase the Property for $2.1 million.  Even with Mr. Ichiyasu's $2.1 million cash offer in hand, your client inexplicably seeks to compel Mr. Ichiyasu to sell his shares in Silverwood for less than a quarter of their objective value unless he can come up with $250,000 in cash within fifteen days.  Taken in context, section 6 is one-sided, overly harsh, oppressive, and shocks the conscious.  Further, the game of 'gotcha' that section 6 seeks to create by deeming Mr. Ichiyasu's failure to respond to any offer as a de facto acceptance is also unconscionable given Mr. Schneider's pattern of conduct and Mr. Ichiyasu's elderly age.

Moreover, the Agreement provided that the Parties were to determine Silverwood's agreed value on an annual basis.  The Parties were to meet on September 15 of each year to "review the Corporation's financial condition as of the end of the preceding fiscal year and [to] decide by mutual agreement the Corporation's fair market value."  Agreement, ¶ 4.  That did not happen.  Instead, Mr. Schneider seems to ignore that Silverwood's sole asset, the Property, is worth at least $2.1 million, which, absent winding down considerations, would make Mr. Ichiyasu's shares worth approximately $1.05 million.  That does not include the $500,000 that Silverwood also owes Mr. Ichiyasu pursuant to section 1.3 of the Agreement.[1]

Mr. Ichiyasu has also repeatedly requested that Silverwood make available to him for inspection its accounting books, records, and minutes and actions of any of its shareholders, board of directors, or committees.  Mr. Schneider has ignored all of these requests.

Lastly, but equally importantly, Silverwood has received substantial rents and revenue from its operations over the course of its existence.  Mr. Ichiyasu has never received any payments or dividends despite Silverwood's substantial income, and none of Silverwood's income has been accounted for under Mr. Schneider's watch.  Mr. Ichiyasu has requested concurrently with this correspondence a request to review Silverwood's accounting records, corporate documents, and its Bylaws.  Mr. Ichiyasu has an unequivocal right to review these documents.  Corporations Code §§ 213, 1601.  His ability to do so is necessary for him to determine his rights and so that we can unwind this toxic relationship.

///

///

---

[1]  This amount should be $750,000, which is the amount that Mr. Ichiyasu originally gave to Mr. Schneider for his interest in the Property.

Silverwood Aviation, Inc.
June 13, 2018
3 of 3

Although we hope to resolve this matter amicably, Mr. Ichiyasu is prepared to seek all remedies available to him in the court(s) of proper jurisdiction. I look forward to working with you to resolve this matter.

Very Truly Yours,

Michael O. Azat

cc: Gerd and Claudia Schneider
    Louis Fazzi
    Jerimy Kirschner

EXHIBIT H

# ALLEN & OVERY

**BY EMAIL AND U.S. MAIL**

Michael Azat
The Azat Law Group
241 E. Colorado Blvd., Suite 201
Pasadena, CA 91101

**Allen & Overy LLP**
1221 Avenue of the Americas
New York NY 10020

Tel                212 610 6300
Fax               212 610 6399
Jacob.Pultman@allenovery.com

June 26, 2018

**Re: Silverwood Aviation, Inc. / Silverwood Properties Corp.**

Dear Mr. Azat:

Thank you for your letter dated June 13, 2018. We understand that Silverwood Aviation, Inc. and Silverwood Properties Corp. (the "**Silverwood Companies**") will provide you with the corporate documents you have requested. We propose a call to discuss Decalux's offer once you have reviewed these documents.

We believe Mr. Ichiyasu has misunderstood Decalux's offer. Decalux offered to purchase Mr. Ichiyasu's shares and Mr. Ichiyasu's shareholder loan. The $250,000 figure provided is in consideration of Mr. Ichiyasu's shares only. Decalux will also pay Mr. Ichiyasu the amount that he is owed under the loan (approximately $432,000).

Taken together, the above is equivalent to what Mr. Ichiyasu would have received under the $2.1 million asset deal he proposed. Under the asset deal, the purchase price would first have gone towards paying off the Silverwood Companies' liabilities. Those liabilities would include a 6% broker fee for the sale ($126,000), a third party loan (approximately $626,980),[1] Mr. Ichiyasu's and Decalux's shareholder loans ($432,000 and $260,000 respectively), tax liabilities resulting from the sale (estimated at approximately $100,000), and winding up costs associated with liquidating the Silverwood Companies. Once these liabilities are accounted for, Decalux and Mr. Ichiyasu would each have 50% of the remaining equity.

Notwithstanding your conclusory claims to the contrary, Paragraph 6 of the Shareholders Agreement is not unconscionable and Decalux's offer plainly triggers this Paragraph. Decalux properly mailed its offer to the address cited in the Shareholders Agreement but, to foreclose any further debate on this, we have re-sent a copy of Decalux's offer under separate cover to this address.

---

[1]     We note that the third party loan was provided in Euros and so the Silverwood Companies' US Dollar liability would depend on foreign exchange rates at the time of sale.

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Barcelona, Beijing, Belfast, Bratislava, Brussels, Bucharest (associated office), Budapest, Casablanca, Doha, Dubai, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Luxembourg, Madrid, Milan, Moscow, Munich, New York, Paris, Perth, Prague, Riyadh (cooperation office), Rome, São Paulo, Seoul, Shanghai, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C. and Yangon.

To the extent your letter accuses Decalux or any of its representatives of bad faith, Decalux specifically and completely denies those allegations. We would note that, as per paragraph 6 of the Shareholders Agreement, Declaux was willing to sell its shares to Mr. Ichiyasu at the same price that Decalux has offered to purchase Mr. Ichiyasu's. Nothing in this letter constitutes any waiver of Decalux's rights or the remedies available to it, and Decalux specifically reserves all such rights and remedies.

Finally, please note that Decalux shares Mr. Ichiyasu's desire to resolve this matter amicably and believes that a full and frank discussion will best advance the collective interests of all the parties. We are happy to discuss this with you further once you have had an opportunity to review the Silverwood Companies' corporate and financial documents.

Sincerely,

Jacob S. Pultman

Copy (by email):     Mr. Jerimy Kirschner
                          Jerimy Kirschner & Associates
                          jerimy@jkirschnerlaw.com

EXHIBIT I

# ALLEN & OVERY

**BY FIRST CLASS MAIL**

Clifford Ichiyasu
1453 W. 123rd St.
Los Angeles, CA 90047

Allen & Overy LLP
1221 Avenue of the Americas
New York NY 10020

Tel             212 610 6300
Fax            212 610 6399
Jacob.Pultman@allenovery.com

June 26, 2018

**Re: Declaux's Offer To Purchase Shares in Silverwood Aviation, Inc. and Silverwood Properties Corp.**

Dear Mr. Ichiyasu:

We write on behalf of Decalux S.A. ("**Decalux**") in connection with its May 4, 2018 offer to purchase your shares in the above mentioned entities (the "**Offer**"), as clarified by an erratum sent on May 5, 2018.

Please find enclosed a copy of the Offer and the May 5, 2018 erratum.  We note that both the Offer and the correction were mailed to you previously at the Los Angeles address specified above, on or around May 5, 2018.

Decalux provides this letter with a full reservation of all rights and remedies, and nothing in this letter waives any rights or remedies available to Decalux.

Sincerely,

Jacob S. Pultman

Copy (by U.S. mail     Mr. Mike Azat
and by email):               The Azat Law Group
                                     241 E. Colorado Blvd., Suite 201
                                     Pasadena, CA 91101

Copy (by email):          Mr. Jerimy Kirschner
                                     Jerimy Kirschner & Associates
                                     jerimy@jkirschnerlaw.com

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Barcelona, Beijing, Belfast, Bratislava, Brussels, Bucharest (associated office), Budapest, Casablanca, Doha, Dubai, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Luxembourg, Madrid, Milan, Moscow, Munich, New York, Paris, Perth, Prague, Riyadh (cooperation office), Rome, São Paulo, Seoul, Shanghai, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C. and Yangon.

**Decalux S.A.**
L-1343 Luxembourg, 25, Montée de Clausen
Grand Duchy of Luxembourg
Capital: EUR 34.200,-
R.C.S. Luxembourg B 193.426
**Tel: 26262905**

TO:

Clifford Ichiyasu
1453 West  123rd Street
Los Angeles CA 90047 -5314
USA

Via facsimile / original to follow:

CC :    Jerimy Kirschner Esq. legal counsel Clifford Ichiyasu,
        Silverwood Properties Corp. ; Silverwood Aviation Inc.  att. Gerd Schneider,
        director , A.V. Raftopol  , secretary


Dear Clifford,

I have been informed by the Management of Silverwood Aviation Inc. and
Silverwood Properties Corp, that you  are pushing it  in a very ambitious way to sell
all of the real estate including the motel business of  the Airport  to a San Diego
Client. You know that Decalux is unhappy with the Broker  and does not trust this
Broker.  Therefore Decalux is not intending to enter into such a sale without the
necessary diligence and  certainly not without properly drafted and reviewed legal
contracts that will protect  the corporations  but lastly you and Decalux as the
shareholders.

I do not understand how your lawyer  tries to make you  believe that  such a complex
deal can be  safely done as a real estate sale  with totally unreasonable deadlines
imposed.

Your lawyer insists that the asset sales price of 2,1 Mio USD minus commissions, for
a Broker that is not even under contract  is acceptable and  is making huge pressure
on the company's management for such a crazy deal  to be closed immediately
without delays and legal  precautions.
Therefore I assume  that this sales price is also acceptable to you  as a shareholder.

I disagree to this sale without the necessary legal  diligence and professional legal and
tax support for the companies as sellers, and I disagree that a broker that has
breached its obligations in the past  is representing both  Seller and Buyer in a deal
that is much more than the sale of real estate.



1

You have invoked a dead lock situation and propose/ threaten that you would undertake legal actions to put the airport under court receivership.
There is no reason to do so . As a shareholder I am not against the offer provided , I am only insisting that this is done correctly.

To help you in your obvious extremely urgent need for money from this sale and as a sign of good faith towards you as our partner and co-shareholder, Decalux SA , being a 50% shareholder is hereby offering you firmly :

To buy all of your shares which you are holding in the two entities that own the business and the real estate known as the "Hesperia Airport", namely Silverwood Aviation Inc. ; and Silverwood Properties Corporation d.b.a Summit Valley Properties in the state of California at a purchase price of

$ 50 ( fifty USD) per share for ALL OF YOUR SHARES ( 50 pcs) you hold in Silverwood Aviation Inc.; and
$ 5000 ( five thousand USD) per share for ALL OF YOUR SHARES ( 500 pcs) you hold in Silverwood Properties Corp.

With the purchase is your shareholder loans will be repaid , subject to the conveyance of the first deed of trust securing the same.

This offer is valid until 19th of May end of the business day ( PST)., and can be accepted by simple written reply.
The purchase price will be paid by Decalux within 3 banking days from the acceptance of his offer by you signing the standard share sales purchase agreement
The total amount is exceeding the amount that you would receive from the asset deal, that your lawyer tries so desperately push down the management´s throat.

I hope this solves the matter and helps you with the obvious urgent need for cash.

To reply to this offer, please contact Decalux´s Luxembourg lawyers , Allen & Overy
Thomas Berger; avocat à la Cour
33 avenue J.F. Kennedy | L-1855 Luxembourg
Tel +352 444455 196 | Fax +352 444455 558

Made today, May 4th 2019
At Luxembourg

Decalux SA (Claudia Schneider)
Director

CLIFFORD ICHIYASU

Via FAX

ORIGINAL BY COURRIER

## ERRATUM

Dear Clifford,

in my yesterday´s offer is a calculation  mistake from an excel bug .

The Value per share on Silverwood PROPERTIES CORP.   offered is

**USD five hundred ( 500 USD)**  straight cash offer.  It is NOT 5000 USD ( five thousand).

The total price Decalux offers for your shares   in both companies is 252 500 USD.

To which the repayment of your shareholder loans is added.

Sincerely and all the best for your birthday today

Claudia Schneider

Decalux SA

4 May 2018

DECALUX S.A.